The result is that the rulings are sustained, and there must be judgment on the verdict.

---

### CRAMPTON *v.* JERKOWSKI.

*(Circuit Court, D. Vermont.* May 19, 1880.)

BANKRUPTCY—PARTNERSHIP—CONDITIONAL SALE.—F. and defendant entered into partnership, F. furnishing $1,500 in cash and defendant $4,500 in goods. Subsequently they dissolved, F. taking the stock and giving defendant notes for his interest, then two-thirds; defendant's share to remain as his property until the notes were paid, and all goods purchased in the meantime, in place of those sold, to be substituted to title of defendant. Subsequently, F. becoming embarrassed, defendant, to protect himself, bought the stock, paying something more than his debt, and, within two months thereafter, F. was declared a bankrupt. In an action against defendant, by F.'s assignee, *held*, that defendant was liable to such assignee for the value of one-third of the original stock on hand, one-third of all that had been purchased with proceeds of original stock, and all of the stock purchased by F. from his own resources, including goods bought on credit and not paid for.

In Equity.

*W. L. Burnap* and *J. C. Baker*, for orator.

*Prout & Walker*, for defendant.

WHEELER, D. J. This cause was heard at last term on bill, answer, replication and proofs. Martin P. Flack and the defendant entered into partnership on the first day of August, 1876, the terms of which were in writing, and were, among other things, that Flack should put in $1,500 capital, and the defendant ready-made clothing to the amount of $4,500. The answer alleges that the goods were to remain the property of the defendant until sold in the course of business, and the defendant has so testified. Flack denies this, and testifies that the written articles of partnership will show how it was.

These have been produced and put into the case, and they do not provide that the goods shall so remain the property of the defendant. On this evidence it is found that the goods put into or brought into the business became the property of the firm and belonged to the partners respectively in proportion to their respective interests.

They continued in partnership until February 8, 1877. Their partnership property then inventoried at $5,824.35. By agreement the defendant took out $800 in amount of the goods, and sold his interest in the residue to Flack for $500 in cash, and his notes of $500 each for the balance, to become due in six, twelve, eighteen and twenty-four months. Flack's $1,500 had remained in all the while. The defendant had put in goods and drawn out money in amounts not definitely stated, and it is difficult to determine how much he had in at that time. Upwards of $400 of the inventory represented accounts and fixtures which he did not buy. In view of the price he sold at, $3,000 must be a liberal allowance for his share of the remaining $4,500, and a little over. On the whole it is found that his interest in what Flack had of the firm was $3,000, and Flack's $1,500, so that he owned two-thirds and Flack one. The sale was a conditional one, such as the laws of the state recognized, and provided that the goods were to remain the property of the defendant until the notes should be paid, and that all goods purchased in place of those sold should be substituted for them in the title of the defendant.

Flack continued the business until into October, 1877, sold old goods, bought new, some for cash and some on credit, paid the defendant the note which fell due in that time, but did not pay his other creditors, and became badly insolvent. The defendant learned of his condition, and, to save himself, bought the stock of goods and fixtures then on hand at about $460 more than his debt, paid $400 in checks, and about $60 in money, delivered up the notes, and took the goods away. Within less than two months a petition in bankruptcy was filed against Flack, upon which he was adjudged a bankrupt, and the orator was appointed assignee of his

estate. This bill is brought to set aside the conveyance of the goods, or of Flack's interest in them, to the defendant. Upon the evidence and the circumstances shown it is quite clear that the sale and conveyance were made to give the defendant a preference over other creditors, and to prevent the property from coming to the assignee in bankruptcy, if there should be one, as there has been, and that the defendant had reasonable cause to believe, and did believe, and know that Flack was insolvent, and that the purpose of making the sale and conveyance was as has been stated. Upon these facts the transfer, so far as it operated as such upon property to which the defendant had not the right before, was, under the provisions of the bankrupt law, void as to the plaintiff.

Much has been said about the effect of a mortgage upon personal property which the mortgagee has, by the terms of the mortgage, a right to sell; and upon after-acquired property which the parties, by the terms of the mortgage, attempt to cover by it; but it does not seem to be necessary to consider such questions here. There has been no mortgage or attempt to mortgage any of this property. The rights of the defendant depend upon the title he retained; not upon any title he acquired by mortgage from Flack. He sold to Flack, reserving the title till payment. The question is as to the extent of that reservation. He reserved the title to the two-thirds which he sold; the other third was already Flack's, and the title to that was not affected, nor attempted to be affected. His only right to Flack's third of that property is what he undertook to get by the transaction which the law makes null as to the orator, so as to give him the right to the property or its value, so far as it was Flack's.

Upon this view there is no difficulty about the rights of the parties in respect to property on hand at the time Flack bought out the defendant. One-third of that property, or the value of one-third, belongs to the orator as assignee; the other two-thirds the defendant had a right to by virtue of his lien. The defendant took the whole away and disposed of it, and thereby has become liable to account to the orator for one-third of its value.

The more difficult questions arise in respect to the property acquired by Flack afterwards. Some of this property was probably paid for from the avails of the original property sold; some of it may have been paid for with other property of Flack; and some of it appears to have been bought on his credit, and not paid for at all. The rights of the parties are to be determined by the laws of Vermont, although the estate of the bankrupt is taken and distributed under the bankrupt law of the United States.

*Paris* v. *Vail*, 18 Vt. 277, shows what the laws of the state are upon most or all of these questions. That case was fully considered, and does not appear to have been doubted or questioned since. *Williams*, C. J., dissented to a part of the judgment, but on the ground that, as he thought, the relation of landlord and tenant gave the plaintiff some additional right to property added by the purchaser to that which had been conditionally sold. There is no such relation here. It was held that the plaintiff, who was lessor of a farm, stock, and farming tools, by a lease providing that the stock and farming tools, and all other stock and farming tools which might be added to or substituted for the same, should be and remain the property of the plaintiff as security for the payment of the rent, etc., could not hold stock and farming tools added by the tenant from his own resources, during the term and before payment, against the creditors of the tenant, and that he could hold the stock and tools substituted by the tenant for the original stock and tools. Here the provision in the agreement of conditional sale from the defendant to Flack was that the goods sold, and those purchased by Flack and substituted for them, should be held by the defendant for the payment of his debt. As to those purchased by Flack in substitution for the original goods, from the avails of them, the defendant is entitled to hold them to the same extent he could the original goods; that is, to the extent of two-thirds of their value. For the other third he is liable to account to the plaintiff. Those, if any, purchased by Flack distinctly from his own resources, including those not paid for from

any source, the plaintiff is entitled to an account for in whole.

This case is not like *Mitchell* v. *Winslow*, 6 Law Rep. 347, 2 Story, 630, cited by *Williams*, C. J., in his dissenting opinion in *Paris* v. *Vail*; nor like *Platt* v. *Stewart*, 13 Blatchf. 481, reversed in part on appeal; *Stewart* v. *Platt*, Supreme Court United States, October term, 1870, Chicago Legal News, February 28, 1880; for each arose under the laws of a state authorizing chattel mortgages—the former in Maine and the latter in New York; while in Vermont, at the time of this transaction, there was no statute authorizing a mortgage of chattels in any form, and no mode by which a lien upon them as against creditors could be created by act of the parties other than by pledge or by conditional sale reserving title. Neither is it like *Cramton* v. *Tarbell*, District Court United States, District Vermont, for in that case there was a loan of actual value, made in good faith, upon security taken in good faith on the occasion of making the loan, which is expressly saved by the bankrupt law. Act of June 22, 1874, § 11. Here the defendant undertakes to acquire Flack's interest by a transfer which the bankrupt law declares void.

The evidence does not show definitely the amounts of these classes of goods, nor their value, nor the value of the share to which the assignee is entitled. The case must, therefore, go to a master to have these amounts and values ascertained.

Let decree be entered for an account of the value of one-third of the original goods purchased by Flack of the defendant, and of those substituted therefor, and of the value of those purchased by Flack and paid for from his own resources, aside from the goods purchased of defendant, if any, and those purchased by Flack and not paid for, taken by the defendant, and for the payment of these amounts, when ascertained, to the orator, with costs.